Our next case this afternoon is case number 415-0759, The People of the State of Illinois v. Chad Williams. For the appellant we have Mr. Rosen, and for the affilee we have Ms. Brooks. You may proceed, counsel. May it please the court, counsel. My name is Zachary Rosen from the Office of the State Appellate Defender, and I represent Mr. Chad Williams. Chad's statutory and constitutional rights were violated when at the sentencing hearing, the trial court relied in aggravation on his statements and information gathered from a mental fitness examination. This is the case that says, for your best but most succinct argument, that a trial judge cannot consider a fitness report at sentencing. After the defendant has been convicted, and the law in Illinois is sentencing hearings have a relaxed attitude toward the introduction of evidence, and where the fitness report would probably be part of the pre-sentence investigation, which is open to the court, and unless ordered closed, is open to the public. Yes, your honor, I think that this court can turn to People v. Nicholas for guidance on exact intersections between state law, section 104-14, the Fifth Amendment protecting rights, and when statements and information gathered from mental fitness examinations can come in at trial or at sentencing. This court can not only look at Nicholas, but can look at other Illinois case law from the Supreme Court in People v. Sutton and People v. Casheney. Casheney was a dual case, People v. Casheney and Lee. And these courts interpret the U.S. Supreme Court ruling in Estelle v. Smith. And that case law provides the two legs that Chad's argument stands on. He raises it under section 104-14, a statute on when we can use these statements. It talks about the use of these statements only when an affirmative insanity defense is raised or an affirmative defense of intoxication. Because Chad never raised that, never intended to raise that at trial, his statements and the information gathered, the conclusions of the doctor must be prohibited at trial and at sentencing. They were not. And at sentencing. What's the basis for that? Well, Your Honor, the information that the judge relied on was prejudicial. And although it may be... Everything in a pre-sentence investigation is likely to be prejudicial. Correct. But some of the information relied on from the mental fitness examination was not in the pre-sentencing information report. And that includes the opinions and conclusions that the doctor reached, such that Chad continues to engage in malicious mischief toward the police and in the community. The doctor called Chad a tyrant, said he was on a reign of terror. The doctor's comments were about future dangerousness. And future dangerousness is fine for the court to consider if it came in only under the PSI. It was wrong for the state to read from the report, and it was wrong for the court to read two pages from the report. Except that future dangerousness in a Supreme Court case and in earlier discussions has to do with using future dangerous to decide whether to impose a death penalty. Isn't that correct? I believe it is, Your Honor, yes. But the future dangerousness is not... That's for the jury to decide whether to impose the death penalty, or the fact finder. Yes. Which means try. Yes, many of the cases I cited involved murders, involved a jury, considering exactly what you're talking about, where this statute is very important to protect the fundamental rights of the defendant. And while we are only looking at criminal trespass and disorderly conduct here, it's clear that the court did rely on this information, and it's important that the court read specifically from the report. It's very clear here in this case that the court did rely on the report and didn't just consider it in passing, that the court relied on it specifically in reading two pages. And when this court is unable to determine the weight given to the improperly considered factor, the mental fitness examination, improper under state law and the Fifth Amendment, the cause must be remanded for resentencing. Now, we know the trial court relied on it because it explicitly provided... Wait a minute. Wait a minute. ...to be successful in rehabilitation. The trial court wouldn't be able to take that into account in deciding whether or not to give impact probation or the length of the sentence or consider that in terms of the quality or the likelihood that rehabilitation was available to that defendant? If the court relied only on the PSI and there was not a mental fitness examination... We're not talking about mental fitness now. We're just talking about something within the PSI that the defendant uses to incriminate himself, if you're using the Fifth Amendment argument, that might make the court give him a heavier sentence. Yes, sir. Does he have to be warned by the probation officer when he's being interviewed after he's been convicted? No, sir. Does he have to be warned that the stuff you say could end up hurting him? No, it's clear that in PSIs that warning does not have to be given. Then why does the warning have to be given here where the defendant submitted to an examination where he was told it would not remain confidential? Well, under state law, 104-14 subsection C, it says the court must advise. Under the Fifth Amendment protections, it says that Chad must have been a Mirandized at the time of the examination. Chad was still in custody, and the Fifth Amendment is all about compulsion. If Chad didn't know that his statements could be used against him, potentially to convict him at trial, although that's not the case here, or to increase sentencing, in a sense, Chad's own statements were used against him to increase the sentence. But that doesn't apply for probation, or for PSIs performed by probation officers. Correct. The protections are only there... What's the logic behind that? An arm of the state is examining this guy and telling the judge about his history, and a lot of the stuff in there could be helpful. A lot of the stuff in there is going to be damning. And it's stuff the judge would not otherwise have a clue about, but for the fact that PSIs apply. Why doesn't the Fifth Amendment privilege against incrimination apply there? I think we have to look at the time in which these examinations occur. The PSI always occurs after conviction. In this case, there was a question of Chad's mental fitness. That's why the examination was ordered, requested by a defense attorney, ordered by the court. And in that instance, Chad needed to know whether or not his statements could be used at trial to convict him. Or whether his statements could be used in sentencing. Or whether they could be used to exonerate him. Correct. Or to prevent him from even being prosecuted. Yes. So if it helps him, it's okay. If it harms him, he gets to exclude. Well, Your Honor, although I think I would have trouble making a prejudice argument if all of the statements did help him, the law is the law. And it is a blanket protection, 104-14. That statute in subsection A explains very explicitly how these statements can come in and for what purpose. Only if you raise an affirmative insanity defense. Only if the court advises. Only if an informed written consent waiver is issued. Is there anything in that statute that suggests that this other critical stage of the proceeding, the sentencing, that the information cannot be used? Well, I think we need to look at the case law for the interpretation. I understand interpreting. I'm asking you if the statute tells us anything. Well, subsection A says as a blanket that it is not admissible against the defendant. And because the statute does not explicitly say at trial or at sentencing... Can I get another crimes evidence at a sentencing hearing? Yes, you can. So I'd be using it against him. Yes. But I can't get that evidence in during the trial unless I meet some specific exception. Chad's argument is not just about what was said. It's about where it came from. It came from the mental fitness examination. When Chad walked into that examination, he was still in custody. And he thought that the purpose of that examination was to determine whether or not he's fit for a pretrial hearing, either fit for trial or not fit for trial. It's unreasonable to think that he walked into that meeting knowing that his statements may be used at trial or may be used at sentencing without advisement from the court. So it's a subjective standard. It's what the defendant thinks. I'm sorry, Your Honor. I don't understand. It's what the defendant thinks about the nature of the examination that's going to determine whether it's going to be usable against him or not. No, I don't think so, Justice Darman. I think what's important is that the law, the state law, protects blindly. The reason I was talking about... Where does 10414 fall within the... Within 725, where does 10414 fall? What course of the proceedings in a criminal case does it fall within? It covers as a blanket protection for all of the proceedings. At any point after a defendant meets with a psychiatrist, at that point, all of those statements, all of the information gathered during that meeting are barred, are kept out of the trial, kept out of sentencing, used only for the purpose of fitness. And the only reason a court can consider that evidence at trial or sentencing is if one of the triggers is met, is if the affirmative insanity defense is raised. Then why would they put it only in the statutes that apply to the criminal trial proceeding itself? 10414 falls within Chapter 725 within a series of statutes that relate to the trial itself. I think that if the legislature intended for this to relate only to the trial phase, they would have said so. And so you're basing it on the fact that the actual statute says, shall not be admissible against the defendant. Exactly. It doesn't say... It does not specify... Except at sentencing. Exactly. It does not specify at trial or at sentencing. And if this court agrees with that argument, you would not be standing alone. People v. Nicklaus said the very same thing. The U.S. Supreme Court interpreted this right under the Fifth Amendment in Estelle v. Smith, and says the very same thing. That Fifth Amendment protections, they attach throughout the entire process. They attach after arrest, throughout trial, and into sentencing. And the state statute is a way to codify the Fifth Amendment protections in state law. Estelle v. Smith came out in 81. The statute comes out very shortly after, in the 80s. And this statute is designed to protect the fundamental rights that are at issue here. Whenever a defense attorney raises a question of fitness, he's doing so because the due process commands that. We cannot convict people that are not fit, so we must answer this question first. The state statute protects the process that the defendant must go through to determine whether or not he's fit. So let me ask you this. If the defendant is arguing at sentencing that the court should give a lesser sentence because of intoxicated condition or insanity, which would be a little bit different vote, but if the defendant raises what's noted in the statute, then it comes in. Then the court can consider it. Yes, if the affirmative defense is raised. And in many of the cases that are relevant for this court to consider, cases that the state brings up, the information comes in at trial or at sentencing because the defendant puts the mental status, the mental insanity in issue. But don't you put your mental status at issue if at sentencing you talk about the unfortunate circumstances of your client's life as a youngster or the stresses or pressures that he is under or those kinds of things are in the PSI and you use them in an attempt to mitigate and yet you know about those or you know about them more expansively because of the examination. There are certain cases that found when the defense raises the medical examination, information from that examination first, that then that's opening the door. In this case, that's not what happened. The state did it first and as mitigation, defense counsel responded. Now in a perfect world, defense counsel would have objected and then been forced to argue if his objection was denied. That's not the case here, but that's still all right. Maybe the defense wanted to point out his abuse as a child, post-traumatic stress disorder, conversion disorder, which the defense wouldn't have known about but for the report. It may have been strategy and we will never know. But even if it were strategy, it was a strategy decision that the attorney was not allowed to make, barred by state statute and protected by the Fifth Amendment. This right is about testifying. In a sense, Chad Williams testified against himself to increase punishment. A defendant's decision to testify at his own trial or at sentencing and allocution is the defendant's decision alone. And so these are state rights and constitutional rights that belong to the defendant. No matter what the attorney does, that attorney cannot take those rights away. It is the defendant's choice to testify. It's the defendant's choice to waive a jury. And the rights codified in state law here, protected from the Fifth Amendment as well, are rights belonging only to the defendant. So it was wrong for the attorney to continue arguing in mitigation about the report. And again, it's not about the substance of what was said, although that is objectionable. That's where the prejudice comes. It's about the blanket protection that the statute and the Fifth Amendment provide. The statute makes it very clear about when this information can come in. The Fifth Amendment is nowhere near as clear as the statute because it's rooted in case law. But it's all about compulsion and about the fundamental fairness that the defendant must enjoy when speaking to a psychiatrist. What compulsion he requested. Yes, yes, he did. He did request it. But without being told that his statements could be used to... He was told that. Your Honor, with respect, I don't think he was. I thought there was a non-confidentiality agreement that was read to him at the outset of the evaluation. That's right. The statement reads as such. But there was nothing about it can be used against you or sentencing. Exactly. It's limitations. It does not meet the requirements under Miranda because it says, it's explained at the outset to Chad, that the examination did not constitute a doctor-patient relationship in the usual sense and that the findings and opinions would be included in a report that would be made available to his attorney, to Chad's attorney. It doesn't say the report's going to the state. It doesn't even say that the report is going to the court. So all psychological evaluations or fitness examinations or competency examinations, whether requested by a defendant or not, in all criminal proceedings in Illinois, require the reading of Miranda prior to the evaluation being conducted. If the defendant is in custody, yes, Your Honor. It also requires advisement from the court under state statute. Neither of those things happened here. And ideally, defense counsel would have objected. Would have objected in a post-trial motion. That didn't happen here. So the claim is certainly forfeited. But this court can get to these issues under plain error, under either prong. Well, it seems to me that when you look at the plain language of the statute, it's clear what you can use it for. And so, kind of as an aside, I'm wondering, I don't really understand what the defendant requesting it, but that has to do with anything. Because it's about whether or not they raise certain defenses. It's not about who requests it. Exactly, Your Honor. And that's exactly what happened in People v. Nicholas. It's only a Second District case, but in that case, the defense requested the psychiatric examination, just as Chaz's attorney did here. That court appointed the attorney. It was a court order, just as it was here. But in Nicholas, the state called the psychologist at sentencing to testify in person. Now, here, the state didn't call the psychiatrist. They only read from the report. The state did so, and the court read two pages from the report. So, in Nicholas, the defendant at least had an opportunity to cross-examine, but nonetheless, regardless, it's still a violation of the rights protected under state statute and the Fifth Amendment. And so, under Prong 1, it was closely balanced because the court only considered a similar number of aggravating and mitigating factors. The court did fail to consider certain mitigating factors as well, and that brings us to fundamental fairness. Of course, we have the fundamental fairness because the state statute is clear. It's a protective blanket that wasn't offered to Chaz, and the Fifth Amendment requires the Mirandization. But the court also failed to consider these mitigating factors, and this court can turn to People v. Davis for the standard that the use of defendants' own statements as aggravation in a sentencing hearing affects such substantial rights that, if error, would require reversal. And it's error here under state law and under constitutional law. This court will not be stepping out on a limb because they can turn and look for guidance in People v. Nicholas, People v. Sutton, People v. Casheney and Lee from the state of Illinois, and, of course, turn to the fundamental case, Estelle v. Smith. That's where the Fifth Amendment protections come in. And so, because Chaz's rights were violated under state law and under Fifth Amendment law, he asks for this remedy, the remedy of remand for a new sentencing hearing where this objectionable information will not be admitted because that defense was never raised, the defense of insanity. Would it be reasonable to interpret this language to not apply to sentencing because of the fact that it talks about raising defenses, and that is something that sounds more akin to what you do at trial versus sentencing? It's an interesting point, Your Honor. If you'd like me to expand on it in supplemental briefing, I'm happy to, but I think we just have to look at the cases that have interpreted the statute and look at the drafting language from the legislature. They meant for it to be limited to the trial or to sentencing or even before trial, pre-trial. They would have said so. They should have said so. They didn't. Thank you, counsel. You'll have time on rebuttal if you so desire. Thank you, Your Honor. Ms. Brooks? Good afternoon, Your Honors. May it please the Court and counsel. My name is Allison Paige Brooks. I'm appearing on behalf of the people. The standard on plain error is whether the defendant has met his burden of persuading that the error was clear or obvious. Without clear or obvious error, his forfeiture must be honored. And he cites one case primarily other than Estelle v. Smith, which was the U.S. Supreme Court, which is the People v. Nicholas case. Nicholas was distinguishable. And that case dealt with testimony of a psychologist that was presented at the sentencing hearing, and the defendant's objection was overruled. So that was a case where the defendant did claim an evidentiary privilege based on the statute, section 104-14, and that claim was overruled. Here, the defendant did not, presumably for tactical reasons, invoke any sort of evidentiary privilege based on the statute or based on his Fifth Amendment privilege against self-incrimination. And when the defendant's counsel argues based on the fitness report at the sentencing hearing, the facts that the defendant has post-traumatic stress disorder, conversion disorder from abuse, in support of arguing in favor of mitigating factors, that shows that this was, in fact, presumably a tactical decision to withhold invoking an evidentiary privilege because invoking that privilege would prevent the defense from arguing what it determined to be important factors in mitigation. Well, counsel, I mean, I do know that the statutory language talks about it shall not be admissible against the defendant. Okay. So is it reasonable to conclude that they're saying you can't use it against them, but that doesn't necessarily preclude his counsel from raising issues that counsel believes would be mitigating? I understand your question. Essentially, the defense is allowed to present the fitness report if it chooses to do so, for example, at trial. It could do so if it wants to. The statute's not barring the defense from doing if it wants to. However, I think if once he has admitted it, the report into evidence, either in trial or sentencing hearing, that opens it up and makes it fair game for use by the prosecution. So he cannot just admit part of the report in his favor and then sort of protect himself from having it being used against him. He can't have it both ways. He can't invoke this evidentiary privilege as a shield and then... Use it as a sword. Yes, as a sword, essentially, and have it both ways. I think that wouldn't be fair, and that's not what the statute intends. Now, of course, that didn't happen here, though. Do you agree? I mean, it wasn't admitted. The court just took it upon itself to read from it. I mean, was it admitted at the sentencing hearing? I'm trying to understand. It was in the common law record, I think, and my recollection is that the trial court, I think, maybe at the outset of the hearing, said that it would be considering the report. If that's true, then it may not have been offered in evidence like a testimony of a psychologist. But the defense is not objecting at that point, and the defense takes advantage of that by arguing from the fitness report factors and mitigation based on the fitness report. So what is your position with respect to the question of whether or not the defendant raised the defense of insanity or the defense of drugged or intoxicated condition? Did the defendant do that in this case? No. Okay. No. The state's position is the statute only applies to trials, not to the sentencing hearing. And the state's argument is based on similar statutory privilege that's contained in Section 115-6, which applies for exams in preparation for the use of an insanity defense. In the case of Selagi, which was the LNA Supreme Court, decided that that statutory privilege, where it says it shall not be admissible, in the same way that Section 104-14 does. And it doesn't say anything about it. It doesn't specifically limit it to at trial. And the defense argument is, well, they would have said so. Well, that didn't matter for Selagi. In the other statute, 115-6, they said it doesn't apply, that bar does not apply to sentencing hearings. And so it's not clear or obvious here, despite his citation to Nicholas, that this is something that even applies to sentencing hearing. And in any event, Nicholas, it's not clear or obvious error in this case if the defendant never invokes an evidentiary privilege. And so that is why he's not met that burden. And essentially, also, I think one question is whether the defendant requested the fitness examination. And, Your Honor, I think Justice Holder-White questioned whether that matters for purposes of the statute. And it's the State's position it does not matter for purposes of the statutory bar, but the defendant is also relying on a constitutional issue under Estelle v. Smith, privilege against self-incrimination. And there, it does matter whether the defendant requested the fitness examination because the Fifth Amendment applies to testimony under compulsion. And Estelle v. Smith, there was compulsion because the defense did not request a fitness examination in that case. And in the Lyles and Primmer cases in Illinois, recognized that this is a different situation where the defendant requests the fitness examination. The compulsion that existed in Estelle v. Smith is not present when the defense is the one that is requesting the fitness examination for purposes of the Fifth Amendment. And I'd also like to clarify something as well. The Fifth Amendment privilege against self-incrimination does extend into the sentencing process. However, the privilege is something that has to be invoked by the defendant. So if the defendant is asked to cooperate with pre-sentence investigation, for example, and refuses to do so, invokes the privilege against self-incrimination, and is thereafter penalized for having invoked his privilege against self-incrimination, that could constitute a constitutional violation. However, that privilege is something that has to be invoked by the defendant. The defendant did not invoke his privilege against self-incrimination. He cooperated and consented to the fitness examination. His argument, though, is that Miranda, for example, or the statutory provisions in Section 104-14 require warnings. In other words, without Miranda warnings, it cannot be used against him. That is his argument. But he hasn't met his plain error burden of showing clear, obvious error. The fact that he was not given Miranda warnings at the outset of his fitness examination makes it inadmissible at sentencing. He has not done that, and that's why he's not entitled to a new sentencing hearing. Ms. Brooks, I'm sorry, can we back up just a little bit? Do you happen to have in front of you the language of 115-6? No, not in front of me. My memory is that the statutory language is similar to 104-14, and therefore the Selagi holding should be applied by analogy, essentially, and that the Nicholas case should not necessarily be followed. It's not definitive authority that a statute such as 104-14 definitely applies to sentencing hearings, although I think that was an objection raised at the sentencing hearing in Nicholas, and Nicholas treated that as a meritorious objection. That is some authority in the defendant's position, but it does not, especially in light of Selagi, constitute clear, obvious error in this case. The other cases he cites, Sutton and Casheney, are also distinguishable because those are cases where the fitness examination statements were used against them in either cross-examination or impeachment of their trial testimony. So, therefore, they do fall in Sutton and Casheney very directly within the evidentiary privilege of Section 104-14 because they were used at trial and not subject to the exceptions for trial. So those cases are distinguishable because this is a sentencing case. So for those reasons, I request this Court to affirm it. Thank you for your time. Thank you, counsel. Any rebuttal argument, counsel? No. Counsel Brooks argues that we have not met the plein air standard, that there is not a clear error here, and I believe she's wrong because the rights that were violated here under state law in the Fifth Amendment are fundamental rights. The fact that Chad was not advised, that he never raised these affirmative defenses, that he wasn't Mirandized, that is what cued up the fundamental error when the State and the Court read from the reported sentencing without any knowledge. And Chad's, without any knowledge to Chad that that could happen, that's where the fundamental error occurred. Now, the State tries to analogize the statute at issue here, 104-14, to the statute at issue in Selagi, 115-6. The State says they're the same, and 115 says you could use it at sentencing. But it clearly doesn't. 115-6 talks specifically about when a defendant raises the affirmative defense of insanity. So 115-6 agrees with all of the protections that protected Chad, but does not apply in Chad's case because he never raised those affirmative defenses. So looking to cases like Selagi or Lyles would be a misstep for this Court because Chad did not raise those affirmative defenses. Furthermore, in Selagi... Then why should we look at Estelle? Well, because what happened in Estelle and what happened in People v. Nicklaus is the exact same thing that happened here. Estelle is a capital case, it was used at trial, and the Supreme Court specifically said, we're not holding this has anything to do with sentencing. That sounds like pretty clear delineation. This is what this applies to, and it doesn't speak to these other matters. The psychiatric testimony in Estelle came in first at sentencing, actually. And defendant did object, and the State raises that because defendant didn't object here, that we should lose, that Chad should lose his argument. She says the same thing happened in Nicklaus. But Estelle, the defendant in Estelle v. Smith and the defendant in Nicklaus didn't win because of the objection. They won because the blanket protections of the statute in the Fifth Amendment were violated. The objection is only an argument about plain error. And if we look at the support from this Court in People v. Maggio, it says that we don't know whether, if we can't determine whether or not the Court relied on that improper factor, then we must remand for a new sentencing hearing. Now, that only makes sense if you agree with me that it's an improper factor under State law or under the Fifth Amendment. I don't think you have to agree with me on both fronts, although I think it's clear that it is a violation of both Fifth Amendment and State law. I think you could pick one and move forward and remand on that alone. So, Nicklaus, he didn't put his mental fitness in issue, just like Chad. That's why it was barred in People v. Nicklaus. Chad did not put it in issue by responding in mitigation. The State statute explains explicitly how you put this in issue, raising that affirmative insanity defense. And because that didn't happen here, the statute and the Fifth Amendment should have protected Chad, but didn't. It was error in this case. It was fundamental error because it's just a clear violation of the protections of State statute and Fifth Amendment. And for those reasons, Chad should satisfy the plain error standard under prong two here. And for that reason, this court should remedy for a new sentencing hearing. And if there are no other further questions from your honors, I would conclude and ask that you grant that to Chad. Thank you. Thank you. We'll take the matter under advisement and be in recess until the next case.